## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Stacey D. Adams |
| | : | |
| v. | : | Mag. No. 25-mj-15118 |
| | : | |
| LaMONICA McIVER | : | **CRIMINAL COMPLAINT** |

I, Robert Tansey, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Department of Homeland Security – Homeland Security Investigations, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

s/ Robert Tansey
Robert Tansey
Special Agent
U.S. Department of
Homeland Security,
Homeland Security
Investigations

Homeland Security Investigations Special Agent Robert Tansey attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(b)(2)(A) on this 19th day of May, 2025.

s/ Stacey D. Adams @ 6:21 p.m.
The Hon. Stacey D. Adams
United States Magistrate Judge

## ATTACHMENT A

### Count One
**(Assaulting, Resisting, and Impeding Certain Officers or Employees)**

On or about May 9, 2025, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

**LaMONICA McIVER**,

did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 1114, namely, a Homeland Security Investigations ("HSI") Special Agent ("V-1"), as described in this Complaint, while V-1 was engaged in and on account of the performance of his official duties, involving physical contact with V-1.

In violation of Title 18, United States Code, Section 111(a)(1).

## Count Two
**(Assaulting, Resisting, and Impeding Certain Officers or Employees)**

On or about May 9, 2025, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

### LaMONICA McIVER,

did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 1114, namely, an Immigration and Customs Enforcement ("ICE") Deportation Officer ("V-2"), as described in this Complaint, while V-2 was engaged in and on account of the performance of his official duties, involving physical contact with V-2.

In violation of Title 18, United States Code, Section 111(a)(1).

## ATTACHMENT B

I, Robert Tansey, am a Special Agent with the Newark Division of the Department of Homeland Security, Homeland Security Investigations ("HSI"). The information contained in the Complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of the evidence, including video surveillance. Because this complaint is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged:

1. LaMonica McIVER ("McIVER") is a sitting Congresswoman representing New Jersey's 10th Congressional District.

2. Delaney Hall currently operates as a federal immigration detention facility. ICE uses the Delaney Hall Federal Immigration Facility ("Delaney Hall") for federal operations.

3. On or about May 9, 2025, McIVER arrived at Delaney Hall in Newark, New Jersey, allegedly to conduct a congressional oversight inspection.

4. The visit took place in tandem with an immigration protest rally at Delaney Hall in the front (unsecured) area of the facility.

5. Perimeter cameras show that when the security gate of Delaney Hall opened momentarily to allow a vehicle to enter into the secure area of the facility, McIVER and two other members of Congress moved quickly inside the secured area as the gate closed.

6. Once the group entered the secured area, the Mayor arrived thereafter at the facility and was told he could not enter without authorization.

7. However, the Mayor returned with members of his security detail and was able to enter inside the gate because the guard was under the impression that the Mayor was part of the Congressional delegation.

8. While McIVER and the Mayor were in the secured area of the facility, V-1, an HSI agent, approached the Mayor and ordered him to leave the facility's secure area.

9. V-1 spent approximately five minutes repeatedly ordering the Mayor to leave and issued multiple warnings that he would be arrested if he did not do so.

10. McIVER and the other Congresspersons overheard this conversation and challenged V-1, protesting the Mayor's removal. V-1 explained to them that

"Congress people are different," indicating members of Congress had lawful authority to be there, and that the Mayor did not.

11. After numerous warnings to leave, and numerous warnings of potential arrest, the HSI agent announced he was going to place the Mayor under arrest. McIVER interjected, yelling "Hell no! Hell no! Hell no!" The HSI agent ordered the Mayor to put his hands behind his back and displayed his handcuffs. McIVER and other members of Congress surrounded the Mayor and prevented HSI from handcuffing him and taking him into custody.

12. McIVER initially remained inside the secured area as the Mayor was then moved outside the gate. Once outside, HSI agents again attempted to handcuff the Mayor. At that time, McIVER hurried outside towards the agents and attempted to thwart the arrest as others yelled "circle the Mayor."

13. McIVER faced the Mayor and placed her arms around him. She and others encircled him in a 'human shield' effort to prevent HSI from completing the arrest that was initiated in the secured area. McIVER's attempts to thwart the arrest included, but are not limited to the following acts.

14. McIVER slammed her forearm into the body of V-1, a uniformed HSI agent. She also reached out and tried to restrain V-1 by forcibly grabbing him.

15. Following the arrest, McIVER also pushed an ICE officer (V-2) and used each of her forearms to forcibly strike V-2 as she returned inside the secure area of the facility.

16. Some representative stills of McIVER'S forcible contact with agents and officers are included below.

**Body Camera Still Frame 1 - V-2**



## Body Camera Still Frame 2 - V-2



## Arial Camera Still Frames V-1

 

 

## Body Camera Still Frame 1-V1



## Body Camera Still Frame 2 – V1



**Body Camera Still Frame 3 – V1**



**Body Camera Still Frame 4 – V1**



15. The above are instances of McIVER's multiple attempts to forcibly assault, resist, oppose, impede, intimidate, and interfere with the agents attempting to take the Mayor into custody.